IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| WALTER JAMES,<br>        Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | EP-25-CV-00162-DB |
| SEARGENT L. CHRIS JOHNSON, *et al.*,<br>        Defendants. | §<br>§<br>§<br>§ | |

**MEMORANDUM OPINION AND ORDER**

On this day, the Court considered the above-captioned case. This case involves claims of alleged First Amendment violations based on Plaintiff Walter James' recording of on-duty El Paso Police Department officers in 2023. On June 24, 2025, Defendant The City of El Paso (the "City") filed its "Motion to Dismiss Plaintiff's Complaint and Demand for Jury Trial Pursuant to Rule 12(b)(6)," ECF No.[1] 13. Therein, the City seeks dismissal of Plaintiff's claims alleging *Monell*[2] liability based on a police department policy, a municipal ordinance, failure to discipline, and failure to train allegedly resulting in a violation of Plaintiff's First Amendment rights. For the foregoing reasons, the City's motion to dismiss is granted in part and denied in part.

**BACKGROUND**

The following facts are derived from Plaintiff's Complaint, ECF No. 1, and are accepted as true to adjudicate the instant motion. Plaintiff is a 50-year-old retired Army NCO. ECF No. 1 at 5. In the early morning hours of May 27, 2023, Plaintiff was in El Paso's entertainment district near the Champagne Villain bar engaging in "faith-based outreach with young adults and service

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in this case. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.
[2] *Monell v. Dep't of Social Servs. of the City of N. Y., et al.*, 436 U.S. 658 (1978).

members." *Id.* The El Paso Police Department had deployed officers to the area to address potential

public intoxication, and impaired driving incidents. *Id.* At some point that night, there was a verbal

altercation outside the Champagne Villain bar. *Id.* Plaintiff witnessed the altercation and

recognized the individuals involved as service members who were preparing to deploy in the

following weeks. *Id.* A group of other individuals stepped in to try and end the altercation, but due

to the limited size of the sidewalk, they were standing on the street. *Id.* El Paso police officers,

including Defendants L. Johnson, D. Johnson, and Silva, approached the group. *Id.* As they did so,

the individuals on the street retreated with their hands in the air in non-violent, non-threatening

postures. *Id.* at 6. Upon reaching the group, one of the police officers violently and forcefully

shoved one of the individuals backing away to the ground, almost causing his head to slam into

the concrete. *Id.*

Plaintiff witnessed all of this and began to video record the situation on his mobile device.

*Id.* At no time did Plaintiff interfere with the officer's ability to perform their duties. *Id.* Plaintiff

stood on a sidewalk approximately 8–10 feet away from the officers, allowing him to record the

incident without impeding the officers. *Id.* As Plaintiff recorded, he engaged in the following

exchange: [3]

> Plaintiff: "I didn't know y'all could push people like that? Is that
> what cops do now? That's what cops do now? Y'all have got to stop
> abusing your power, man. Hey, y'all push people now?"
> Officer L. Johnson: "Yes sir. Have a good night."
> Plaintiff: "That's not alright. That's not alright. That's exactly why
> we messed up now."

---

[3] The following dialogue was derived from Plaintiff's Complaint, ECF No 1, and summarized for clarity.

*Id.* at 6–7. Plaintiff continued recording and observed Officer L. Johnson physically displace a bystander on the public sidewalk nearby. *Id.* at 7. Plaintiff said, "[h]ey don't put your hands on him, either. Hey, look, no, none of that. We saw you. That's assault." *Id.* Plaintiff continued filming the police interactions from a reasonable distance. *Id.*

After the arrested individuals were transported to holding, officers continued to engage with the bystander who asked for their badge number. *Id.* Officers refused to provide it and instructed the bystander to leave. *Id.* at 8. Plaintiff continued recording the interaction, and from a reasonable distance, also asked for Officer L. Johnson's badge number. *Id.* Officer L. Johnson responded by asking to see Plaintiff's identification. *Id.* Plaintiff offered to trade his identification for Officer L. Johnson's badge number. *Id.* At this time, Officer L. Johnson moved his high-powered flashlight directly into Plaintiff's eyes from only a few feet away and refused to move the light from his face when asked. *Id.* at 8–9. When Plaintiff again asked Officer L. Johnson for his badge number, he knocked Plaintiff's phone out of his hand. *Id.* at 9. Without ever telling Plaintiff he was under arrest, Officer L. Johnson told him to turn around. *Id.*

Unaware that Officer L. Johnson intended to arrest him, Plaintiff verbally questioned the officer's actions. *Id.* Officer L. Johnson still did not tell Plaintiff he was under arrest and instead escalated the situation by calling for another officer to tase Plaintiff. *Id.* While Plaintiff was complying with the officer's directive to turn around, Officer L. Johnson grabbed Plaintiff's phone once again, grabbed Plaintiff, placed one hand in handcuffs, and slammed Plaintiff to the ground.[4] *Id.* at 10. Officers L. Johnson, Silva, Gomez, and unidentified John Does forcefully restrained

---

[4] Plaintiff alleges video evidence clearly shows he was turning around to comply with Officer L. Johnson's order when such force was used against him. *Id.* at 10.

Plaintiff on the ground in a prone position. *Id.* At this time, Plaintiff shouted, "someone record this please!" *Id.* In retaliation for this request, Officer L. Johnson ordered a fellow officer to tase Plaintiff. *Id.* Plaintiff asked "for what" as officers continued tasing him. *Id.* In total, Plaintiff was tased 13 times over a period of approximately two minutes. *Id.* Following the multiple taser applications, Plaintiff began experiencing severe chest pains. *Id.* at 11. Despite his obvious medical distress, officers kept Plaintiff in holding for an hour before his condition was addressed. *Id.* At that time, his blood pressure showed he was in hypertensive crisis and was transported to the hospital for treatment. *Id.* In total, Plaintiff was detained for 15 hours in handcuffs and spent a subsequent 9 hours more in shackles before he bonded out. *Id.*

Plaintiff was criminally charged with three offenses: (1) Interference with Public Duties, (2) Resisting Arrest, and (3) Assault on a Public Officer. *Id.* Officer L. Johnson's affidavit supporting these charges averred Plaintiff "a. Was physically obstructing officers' view; b. Was standing closer than arm's length to officers after being instructed to move back; c. "Violently ripped his hands away" when officers attempted to arrest him; d. Pulled his body weight down to the ground causing officers to fall; e. Tucked his arms under his body while ignoring verbal commands; and f. Actively resisted officers."[5] *Id.* at 12. On June 8, 2023, Plaintiff filed a formal complaint with the El Paso Police Department's Internal Affairs Division alleging officer misconduct. *Id.* By June 15, 2023, the division had inexplicably concluded no misconduct

---

[5] Plaintiff alleges "[b]ody camera footage and civilian witness videos directly contradict these claims, showing that Mr. James was standing at a reasonable distance, was attempting to comply with commands when force was used against him, and did not physically resist officers at any point." *Id.* at 12.

occurred, and no disciplinary action was taken against the officers. *Id.* Finally, in February 2024, the district attorney's office dismissed all criminal charges against Plaintiff. *Id.*

On May 5, 2025, Plaintiff filed suit alleging multiple causes of action against the individual officers and the City of El Paso. Relevant to the instant motion, Plaintiff asserts the three following causes of action against the City: (1) 42 U.S.C. § 1983 (First Amendment – Prior Restraint), (2) 42 U.S.C. § 1983 (Monell Liability) for A. Written Policy – Procedures Manual of the El Paso Police Department, Policy 343.11(A); B. Written Policy – Enforcement of El Paso Code § 10.04.040; C. Failure to Discipline; and D. Failure to Train., and (3) declaratory relief that that this Court declare the "phrase 'words, sounds' of El Paso Code § 10.04.040 unconstitutional" because the phrase imposes "an impermissible restriction on protected speech" in violation of the First Amendment, and injunctive relief enjoining the City from enforcing it in the future. ECF No. 1 at 20–21, 31–39. On June 24, 2025, the City filed the instant motion to dismiss seeking dismissal of all claims against it pursuant to Rule 12(b)(6). ECF No. 13. The Court addresses each argument in turn.

## LEGAL STANDARD

A. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court accepts all well-pleaded facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023) (cleaned

up). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545, 555.   In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  When a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.; Iqbal*, 556 U.S. at 678.

B.  42 U.S.C. § 1982

Under 42 U.S.C § 1983, "municipalities may be held liable for their own constitutional torts, but they cannot be held vicariously liable for the constitutional torts of their employees," *Monacelli v. City of Dall., Tex.*, No. 24-10067, 2024 WL 4692025 at *1 (5th Cir. Nov. 6, 2024). Therefore, the inquiry here is whether the constitutional injuries plaintiffs allege they suffered are "directly attributable" to something the municipality itself did by way of "official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Courts employ the three-factor *Monell* test to assess a municipality's own liability. *Monell*, 436 U.S. at 694 (1978). Under this test, a plaintiff must plausibly plead "an official policy (or custom), of which a policymaker can be charged with actual or constructive knowledge, and a constitutional violation whose moving force is that policy or custom." *Valle v. City of Hous.*, 613 F.3d 536, 541–42 (5th Cir. 2010) (internal quotation marks omitted).

## ANALYSIS

Plaintiff claims the City itself is liable for adopting or failing to adopt policies that were the moving force behind the alleged violation of his First Amendment right to record the police while they carry out their duties in public.

A. EPPD Policy 343.11(A)

Plaintiff asserts the City's police department maintains an official written policy, EPPD Policy 343.11(A), that constitutes a facially unconstitutional prior restraint on protected First Amendment activity. ECF No. 1 at 20; ECF No. 18 at 5–6. As a preliminary matter, in its motion to dismiss, and against Plaintiff's objection,[6] the City seeks to introduce the full section of the manual in which the challenged policy is located. *See* ECF No. 13 at 6–7. Respondent contends Plaintiff's allegation of this policy is selective and fails to consider its context and reach. *Id.* at 6. After due consideration, and because this evidence is central[7] to the claims raised in Plaintiff's Complaint, the Court will consider the full manual in resolving the motion to dismiss.

In his Complaint, Plaintiff alleges "[t]he Procedures Manual of the El Paso Police Department, Policy 343.11(A) states that '[t]he following are requirements for media request or the creation of video/photo content for internal and external distribution: A. All filming (photo ops and video recordings) of on-duty personnel must have prior approval from the Public Information Office.'" ECF No. 1 at 31–32. A full review of the context of this policy reveals it is intended to manage

---

[6] Plaintiff argues "[t]he City's motion improperly relies on evidence outside Plaintiff's complaint, including statistical data about officer staffing and call volumes (City's Mot. ¶ 3.18 n.3),2 broader policy manual context beyond what Plaintiff cited (City's Mot. at 6-7), and detailed criminal charge information not alleged in the complaint." ECF No. 18 at 3.

[7] "When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (citations omitted). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 499 (5th Cir. 2000).

media relations. In fact, the introductory paragraph of Section 343 of the Police Manual states of that "the purpose of the policy is to define the responsibilities of the Public Information Office ("PIO") as it relates to media and news." ECF No. 13 at 6.

Section 1983's "moving force" element requires a plaintiff to demonstrate that through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* Here, Plaintiff alleges officers threw his camera to the ground and arrested him "at least partially to enforce Defendant City's policy." ECF No. 1 at 33. There are no factual allegations that this media policy was linked to the underlying events. Plaintiff was not denied access to film the police under this policy, threatened with removal or arrest because of this policy, disciplined under this policy, nor even credibly altered his behavior to avoid consequences under this policy. Without more, Plaintiff's claims are merely conclusory.

Further, Plaintiff tries to overcome the City's arguments by framing this question as a legal one— "a policy's facial constitutionality is analyzed independently of whether it would apply to any particular plaintiff." ECF No. 18 at 6. This is an overreach. Even if Plaintiff were merely bringing a facial challenge to the constitutionality of EPPD Policy 343.11(A), Plaintiff would have to satisfy the indisputable elements of Article III standing, which he does not do here. *See generally* ECF No. 1 (failing to provide any facts to satisfy standing); ECF No. 18 at 10 (summarily asserting Plaintiff has Article III because he suffered concrete injury from enforcement of these policies and

faces a credible threat of future enforcement without any factual support). For these reasons, Plaintiff's First Amendment prior restraint claim is dismissed.

B.  Written Policy – El Paso Code § 10.40.040

With respect to Ordinance 10.04.040, Plaintiff seeks to assert a *Monell* claim for alleged violation of his constitutional rights when officers enforced this ordinance against him. ECF No. 1 at 33–35. He also seeks declaratory relief declaring the ordinance as unconstitutionally overbroad and an injunction barring its future enforcement. *Id.* at 40–41.

As to Plaintiff's *Monell* claims based on Ordinance 10.04.040, the City only disputes one element of the claim. It argues that "[b]ecause Plaintiff was charged with two offenses arising from the Texas Penal Code, Plaintiff does not and cannot [] sufficiently allege that the Municipal Code Ordinance was the moving force behind his alleged deprivation of a constitutional right. ECF No. 13 at 8. El Paso Code § 10.04.040 states, "[n]o person shall, whether by words, sounds, or acts, hinder, obstruct or impede, or attempt to hinder, obstruct or impede, any police officer of the city in the performance of any official duty of such officer, other than the making of an arrest or the service of process." ECF No. 1 at 33–34. The City's only argument to dismiss this claim is unpersuasive. *Monell* establishes only that an official policy be a "moving force," not a sole or exclusive cause. *Monell*, 436 U.S. at 694 (using the words "moving force" behind a constitutional violation, not exclusive cause); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997) (discussing *Monell's* "moving force" as requiring a plaintiff to "show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights," noting more). The City concedes Plaintiff was in fact arrested and charged with violating Municipal Code § 10.04.040 Hindering the Police. ECF No.

13 at 8. As such, the Court finds the City's *Monell* argument unpersuasive. Plaintiff's claim may move forward.

As to the declaratory and injunctive relief sought by Plaintiff, the City's argues Plaintiff does not have standing to facially challenge this ordinance as unconstitutionally overbroad because he has not made any statement that the code provision at issue would be enforced against him in the future. *Id.*  To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992). A plaintiff seeking injunctive relief must show that he is in immediate danger of sustaining some direct injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (citation omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* at 95–95 (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495–96 (1974)). "'The party invoking federal jurisdiction bears the burden of establishing' standing." *Clapper v. Amnesty Intl. USA*, 568 U.S. 398, 411–412 (2013) (citation omitted). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan,* 504 U.S. at 561 (citations omitted).

Here, Plaintiff fails to meet his burden. At the motion to dismiss stage, all well-plead allegations are accepted as true, and reasonable inferences are drawn in favor of the Plaintiff. *Ashcroft*, 556 U.S. at 678 (citation omitted). However, Plaintiff makes no mention of future conduct that could lead to the inference Ordinance 10.04.040 could be enforced against him in the

future. In his Response to the City's Motion to Dismiss, Plaintiff asserts he met his burden by alleging "ongoing 'faith-based outreach' activities in areas where police are present (Compl. ¶ 18), and his recent prosecution demonstrates the City views such conduct as violating the ordinance." ECF No. 18 at 11. But that mischaracterizes the allegations in the Complaint. Plaintiff's only mention of engaging in "faith-based outreach" is to describe his conduct at the time of the underlying events that led to his past arrest. *See* ECF No. 1 at 5. There are no factual allegations about Plaintiff's intention to continue engaging in such conduct in the future. Plaintiff argues that "[r]equiring explicit statements of intent to violate potentially unconstitutional laws would immunize bad ordinances from challenge a result that contradicts *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014), which held that credible enforcement risk, not stated intent to violate, establishes standing for facial challenges." ECF No. 18 at 11. However, in *Driehaus* itself and in every case cited by the Supreme Court to support its "credible enforcement risk" standard, there existed factual allegations about "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Driehaus*, 573 U.S. at 159 (citation omitted). Plaintiff's Complaint does not contain any factual allegations of that sort. As such, the Court finds Plaintiff does not have standing to seek declaratory or injunctive relief as to Ordinance 10.04.040 and finds such claims should be dismissed.

C.  Failure to Discipline

The City also seeks to dismiss Plaintiff's failure to discipline claim. To establish Section 1983 liability, plaintiff must plead a deprivation of constitutional rights was inflicted pursuant to official custom or policy. *Piotrowski v. City of Houston, et al.*, 237 F.3d 537, 581 (5th Cir. 2001). The

policy need not be written and can be evidenced by a custom that is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy. . . .". *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). However, the Fifth Circuit has held that "[i]n order to find a municipality liable for a policy based on a pattern, that pattern 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009)). "A pattern requires similarity, specificity, and sufficiently numerous prior incidents." *Id.*

Here, Plaintiff alleges a deliberately indifferent City adopted the informal custom of not disciplining its officers after they violated individuals' civil rights to criticize and/or film the police. ECF No. 1 at 35–37. Plaintiff identifies three other incidents to support his contention of an informal custom. *Id.* at 36–37. The City argues even if the three prior incidents cited by Plaintiff are similar enough to his encounter with police, they are not numerous enough to show a pattern. ECF No. 13 at 9; ECF No. 20 at 4–5.

Assuming arguendo the three cited incidents were sufficiently similar to Plaintiff's, the Court agrees with the City that three instances over a five-year period are insufficient to satisfy the elements of a "persistent, widespread practice of City officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (citation omitted); *see also Webster*, 735 F.2d at 842. As the Fifth Circuit instructed in *Webster*:

> If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.

*Webster*, 735 F.2d at 842. The Court agrees that three incidents in a city as large as El Paso are over a span of five years fails to meet the heavy burden of a pervasive pattern.[8] *Cf. Thompson ex rel. Neveah T. v. Martinez*, 789 F.Supp.3d 491, 530–31 (W.D. Tex. 2025) (noting that even if the Court assumes that all three incidents were sufficiently similar, that number falls well short of what is required to establish a pattern); *see, e.g., Armstrong v. Ashley*, 60 F.4th 262, 277–78 (5th Cir. 2023) (nine incidents over twenty-four year period not sufficient to establish a pattern); *Saenz v. City of El Paso*, 637 F. App'x 828, 832 (5th Cir. 2016) (twenty-one incidents were not sufficient to establish a pattern). Even the case cited by Plaintiff to support his position included significantly higher numbers over a shorter time span. *See Barnes v. City of El Paso*, 677 F.Supp.3d 594, 609, 612 (W.D. Tex. 2023) (finding element was well-pled based on twenty-one specific alleged incidents, describing ten in detail, over a four-year period with statistics that place them in a larger context).

In sum, Plaintiff fails to plead sufficient similar incidents of the City not disciplining its officers after they violated individuals' civil rights to criticize and/or film the police that together constitute a pervasive, widespread practice that is so common and well-settled as to constitute a custom that

---

[8] "According to the El Paso Police Department's Annual Report 2023, the Department consisted of 1,119 sworn officers for a population of 711,610 responding to a total of 330,257 calls for service." ECF No. 13 at 9.

fairly represents municipal policy. Plaintiff's *Monell* claim for failure to discipline must be dismissed.[9]

### D. Failure to Train

Plaintiff also asserts the City adopted an informal custom of failing to adequately train its police officers regarding citizens' First Amendment rights, particularly the right to record police performing their duties in public. ECF No. 1 at 37–39.  In order to successfully plead a claim for failure to train, a plaintiff "must plead facts plausibly establishing '(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question.'" *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020) (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)). In the failure-to-train context, deliberate indifference may be established in two ways. First, a plaintiff may plead that a municipality had "notice of a pattern of similar violations at the time the plaintiff's own rights were violated." *Robles v. Ciarletta*, 797 F. App'x 821, 833 (5th Cir. 2019). Second, there is a "single incident exception" where, even absent proof of a pattern, deliberate indifference can be inferred if a factfinder determines that the risk of constitutional violations was or should have been an

---

[9] Courts in the Fifth Circuit routinely dismiss Section 1983 municipal lawsuits based on failure to identify a pattern of similar unconstitutional behavior at the pleading stage. *See, e.g., Peña v. City of Rio Grande, Tex.*, 879 F.3d 613, 623 (5th Cir. 2018) (upholding dismissal of pleadings where Plaintiff failed to identify pattern); *Self v. City of Mansfield, Tex.*, 369 F.Supp.3d 684, 702-03 (N.D. Tex. 2019) (dismissing plaintiff's complaint after finding, among other things, no alleged "pattern of repeated constitutional violations" or "evidence of persistent, repeated, and constant violations of constitutional rights by virtue of this alleged failure to train."); *Harvey v. Montgomery Cnty., Tex.*, 881 F.Supp.2d 785, 798 (S.D. Tex. 2012) (dismissing First Amendment claims for failure to allege a pattern of similar violations).

"obvious" or "highly predictable consequence" of the alleged training inadequacy. *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003).

Here, the City makes two arguments for dismissal: (1) Plaintiff does not even allege one single specific instance that would plausibly establish the City had notice of similar violations at the time plaintiff's own rights were violated; and (2) Plaintiff fails to plead the legal minimum of training was inadequate because the police department's training programs comply with the Texas Commission of Law Enforcement. ECF No. 13 at 11. Neither argument is dispositive. Irrespective of pleading a pattern, Plaintiff adequately pleads facts to support a *Monell* claim under the second alternative.

Regarding the second alternative, to hold a municipality liable for failure to train an officer, "it must have been obvious that "the highly predictable consequence of not training" its officers was that they "would apply force in such a way that the [constitutional] rights of [citizens] were at risk." *Peterson v. City of Ft. Worth, Tex.*, 588 F.3d 838, 849 (5th Cir. 2009). Thus, the single-incident exception is reserved for where the defendant completely fails to train regarding (1) a "clear constitutional duty" (2) implicated in "recurrent situations" that (3) a particular employee is "certain to face." *City of Canton v. Harris*, 489 U.S. 378, 396 (1989). For example, the Fifth Circuit found that the single-incident exception was viable where the plaintiff alleged that a school district provided its employees with no training whatsoever regarding the constitutional requirements for performing searches of students. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 625 (5th Cir. 2018). It explained that the "precise nature" of the Fourth Amendment's "constraints on searches" was "sufficiently clear in the law" because "[s]tudent searches are governed by defined principles such as the need for individualized suspicion, the nexus

requirement, and the limit on unduly intrusive means." *Id.* at 625–26. Further, the Court explained that "the school district knew or should have known to a high degree of certainty that [the teacher in question] and other employees would be placed in situations requiring knowledge of Fourth Amendment search law." *Id.* at 626. And, the plaintiffs alleged that the defendant provided no training whatsoever as to this constitutional duty. *Id.*

The Court finds Plaintiff also met his pleading burden here. Plaintiff alleges the City provided no training whatsoever on an individual's First Amendment rights to record police activities. ECF No. 1 at 39. Plaintiff also alleges a clear constitutional duty – "a duty to ensure proper training of their police officers" regarding the "clearly established . . . First Amendment right to record police performing their duties in public." ECF No. 1 at 38. Plaintiff also alleges this right is implicated in "recurrent situations" a particular employee is certain to face  because "[t]he nature of police officers' duties make it highly predictable that they will regularly encounter citizens recording their activities," and Plaintiff in fact alleges other incidents that support the recurrent nature of police interactions with public members who record them.[10] *Id.* at 39. As such, Plaintiff pleads sufficient facts, accepted as true, to support a single incident exception applies, overcoming the City's only challenge to any element of this claim.

Finally, the City argues Plaintiff fails to state a claim because police department's training programs comply with the Texas Commission of Law Enforcement. ECF No. 13 at 11. "[The Fifth Circuit] consider[s] compliance with state requirements as a factor counseling against a 'failure to

---

[10] Although Plaintiff pleads three prior incidents in an attempt to establish a pattern under the first alternative, the Court draws the reasonable inference that police interactions with public members who record them while they carry out their duties in public may plausibly be a recurrent situation officers encounter for purposes of alleging this element under the second alternative.

train' finding." *Zarnow v. City of Wichita Falls. Texas,* 614 F.3d 161, 171 (5th Cir. 2010) (citing *Conner v. Travis County,* 209 F.3d 794, 798 (5th Cir. 2000)). When officers have received training as required by state law, the plaintiff must show that the legal minimum of training was inadequate. *See Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992). The Court declines to find this argument dispositive at this stage of the proceedings. Plaintiff argues the City provides no training whatsoever on an individual's First Amendment right to record police performing their duties in public. ECF No. 1 at 38–39. And the City does not specify whether the state's minimum includes any training on this constitutional right at all. As such, the Court finds this argument is not dispositive at this juncture. Upon resolving the arguments in the City's Motion, Plaintiff's claim for failure to train may proceed.

**CONCLUSION**

For the reasons stated above, Defendant The City of El Paso's "Motion to Dismiss Plaintiff's Complaint and Demand for Jury Trial Pursuant to Rule 12(b)(6)," ECF No. 13, is **GRANTED IN PART and DENIED IN PART**.

**SIGNED** this **30th** day of **March 2026**.

_____

**THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE**
