IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| WALTER JAMES,<br>        Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | EP-25-CV-00162-DB |
| SEARGENT L. CHRIS JOHNSON, *et al.*,<br>        Defendants. | §<br>§<br>§ | |

**MEMORANDUM OPINION AND ORDER**

On this day, the Court considered the above-captioned case. This case involves claims of alleged First Amendment violations based on Plaintiff Walter James' recording of on-duty El Paso Police Department officers in 2023. On June 24, 2025, Defendants Sergeant L. Chris Johnson, Officer David Johnson, Officer Michael Silva, and Detective Gomez (collectively "Officers") filed a "Joint Rule 12(B)(6) Motion to Dismiss Plaintiff's Complaint and Demand for Jury Trial," ECF No.[1] 17. Therein, the officers assert qualified immunity and alternatively seek dismissal under Federal Rule of Civil Procedure 12(b)(6). For the foregoing reasons, the Officer's motion to dismiss is granted in part and denied in part.

**BACKGROUND**

The following facts are derived from Plaintiff's Complaint, ECF No. 1, and are accepted as true to adjudicate the instant motion. Plaintiff is a 50-year-old retired Army NCO. ECF No. 1 at 5. In the early morning hours of May 27, 2023, Plaintiff was in El Paso's entertainment district near the Champagne Villain bar engaging in "faith-based outreach with young adults and service

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in this case. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

members." *Id.* The El Paso Police Department had deployed officers to the area to address potential public intoxication, and impaired driving incidents. *Id.* At some point that night, there was a verbal altercation outside the Champagne Villain bar. *Id.* Plaintiff witnessed the altercation and recognized the individuals involved as service members who were preparing to deploy in the following weeks. *Id.* A group of other individuals stepped in to try and end the altercation, but due to the limited size of the sidewalk, they were standing on the street. *Id.* El Paso police officers, including Defendants L. Johnson, D. Johnson, and Silva, approached the group. *Id.* As they did so, the individuals on the street retreated with their hands in the air in non-violent, non-threatening postures. *Id.* at 6. Upon reaching the group, one of the police officers violently and forcefully shoved one of the individuals backing away to the ground, almost causing his head to slam into the concrete. *Id.*

Plaintiff witnessed all of this and began to video record the situation on his mobile device. *Id.* At no time did Plaintiff interfere with the officers' ability to perform their duties. *Id.* Plaintiff stood on a sidewalk approximately 8–10 feet away from the officers, allowing him to record the incident without impeding the officers. *Id.* As Plaintiff recorded, he engaged in the following exchange: [2]

> Plaintiff: "I didn't know y'all could push people like that? Is that what cops do now? That's what cops do now? Y'all have got to stop abusing your power, man. Hey, y'all push people now?"
> Officer L. Johnson: "Yes sir. Have a good night."
> Plaintiff: "That's not alright. That's not alright. That's exactly why we messed up now."

---

[2] The following dialogue was derived from Plaintiff's Complaint, ECF No 1, and summarized for clarity.

*Id.* at 6–7. Plaintiff continued recording and observed Officer L. Johnson physically displace a bystander on the public sidewalk nearby. *Id.* at 7. Plaintiff said, "[h]ey don't put your hands on him, either. Hey, look, no, none of that. We saw you. That's assault." *Id.* Plaintiff continued filming the police interactions from a reasonable distance. *Id.*

After the arrested individuals were transported to holding, officers continued to engage with the bystander who asked for their badge number. *Id.* Officers refused to provide it and instructed the bystander to leave. *Id.* at 8. Plaintiff continued recording the interaction, and from a reasonable distance, also asked for Officer L. Johnson's badge number. *Id.* Officer L. Johnson responded by asking to see Plaintiff's identification. *Id.* Plaintiff offered to trade his identification for Officer L. Johnson's badge number. *Id.* At this time, Officer L. Johnson moved his high-powered flashlight directly into Plaintiff's eyes from only a few feet away and refused to move the light from his face when asked. *Id.* at 8–9. When Plaintiff again asked Officer L. Johnson for his badge number, he knocked Plaintiff's phone out of his hand. *Id.* at 9. Without ever telling Plaintiff he was under arrest, Officer L. Johnson told him to turn around. *Id.*

Unaware that Officer L. Johnson intended to arrest him, Plaintiff verbally questioned the officer's actions. *Id.* Officer L. Johnson still did not tell Plaintiff he was under arrest and instead escalated the situation by calling for another officer to tase Plaintiff. *Id.* While Plaintiff was complying with the officer's directive to turn around, Officer L. Johnson grabbed Plaintiff's phone once again, grabbed Plaintiff, placed one hand in handcuffs, and slammed Plaintiff to the ground.[3] *Id.* at 10. Officers L. Johnson, Silva, Gomez, and unidentified John Does forcefully restrained

---

[3] Plaintiff alleges video evidence clearly shows he was turning around to comply with Officer L. Johnson's order when such force was used against him. *Id.* at 10.

Plaintiff on the ground in a prone position. *Id.* At this time, Plaintiff shouted, "someone record this please!" *Id.* In retaliation for this request, Officer L. Johnson ordered a fellow officer to tase Plaintiff. *Id.* Plaintiff asked "for what" as officers continued tasing him. *Id.* In total, Plaintiff was tased 13 times over a period of approximately two minutes. *Id.* Following the multiple taser applications, Plaintiff began experiencing severe chest pains. *Id.* at 11. Despite his obvious medical distress, officers kept Plaintiff in holding for an hour before his condition was addressed. *Id.* At that time, his blood pressure showed he was in hypertensive crisis and was transported to the hospital for treatment. *Id.* In total, Plaintiff was detained for 15 hours in handcuffs and spent a subsequent 9 hours more in shackles before he bonded out. *Id.*

Plaintiff was criminally charged with three offenses: (1) Interference with Public Duties, (2) Resisting Arrest, and (3) Assault on a Public Officer. *Id.* Officer L. Johnson's affidavit supporting these charges averred Plaintiff "a. was physically obstructing officers' view; b. Was standing closer than arm's length to officers after being instructed to move back; c. "Violently ripped his hands away" when officers attempted to arrest him; d. Pulled his body weight down to the ground causing officers to fall; e. Tucked his arms under his body while ignoring verbal commands; and f. Actively resisted officers."[4] *Id.* at 12. On June 8, 2023, Plaintiff filed a formal complaint with the El Paso Police Department's Internal Affairs Division alleging officer misconduct. *Id.* By June 15, 2023, the division had inexplicably concluded no misconduct

---

[4] Plaintiff alleges "[b]ody camera footage and civilian witness videos directly contradict these claims, showing that Mr. James was standing at a reasonable distance, was attempting to comply with commands when force was used against him, and did not physically resist officers at any point." *Id.* at 12.

occurred, and no disciplinary action was taken against the officers. *Id.* Finally, in February 2024, the district attorney's office dismissed all criminal charges against Plaintiff. *Id.*

On May 5, 2025, Plaintiff filed suit alleging multiple causes of action against the individual officers and the City of El Paso. Relevant to the instant motion, Plaintiff asserts the following causes of action against the Officers: (1) a prior restraint claim against Defendant L. Johnson, (2) a retaliation claim against all Defendant Officers, (3) a retaliatory arrest claim against all Defendant Officers, (4) an unlawful seizure claim against Defendants L. Johnson and Gomez, (5) an excessive force claim against all Defendant Officers, (6) a retaliatory prosecution claim against Defendant D. Johnson, and (7) a malicious prosecution claim against Defendant D. Johnson. ECF No. 1 at 20–31. On July 3, 2025, the Officers filed the instant motion to dismiss seeking dismissal of all claims against it pursuant to Rule 12(b)(6). ECF No. 17. The Court addresses each argument in turn.

## **LEGAL STANDARD**

### A. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court accepts all well-pleaded facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023) (cleaned up). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545, 555. In short, a

complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. When a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.; Iqbal*, 556 U.S. at 678.

B. Qualified Immunity

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine gives government officials the ability to make reasonable, but mistaken judgments. *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotations and citations omitted). A court should not deny immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).

However, a plaintiff may defeat a claim of qualified immunity by demonstrating the inapplicability of the defense. *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017). To rebut qualified immunity, a plaintiff must demonstrate: (1) the official's conduct violated the plaintiff's statutory or constitutional right, and (2) the official's conduct was objectively unreasonable in light of clearly established law at the time of the violation. *Id.*

A constitutional right must be "sufficiently clear to put a reasonable officer on notice that certain conduct violates that right." *Sanchez v. Swyden,* 139 F.3d 464, 466 (5th Cir. 1998). The objectively reasonable standard ensures officers were on notice their conduct was unlawful before they are subjected to a lawsuit. *Pearson*, 555 U.S. at 244. Objective unreasonableness can be

established even where there is not a case directly on point. *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020). If the situation itself is so "extreme" that "no reasonable correctional officer could have concluded that . . . it was constitutionally permissible," then objective unreasonableness is met. *Id.* A court can begin its assessment with either prong, but both must be answered in the affirmative to deny immunity. *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014).

## ANALYSIS

Officers assert Plaintiff fails to plead facts to overcome the qualified immunity they are entitled to. This Court addresses the following claims advanced by Plaintiff: (1) a prior restraint claim against Defendant L. Johnson, (2) a retaliation claim against all Defendant Officers, (3) a retaliatory arrest claim against all Defendant Officers, (4) an unlawful seizure claim against Defendants L. Johnson and Gomez, (5) an excessive force claim against all Defendant Officers, (6) a retaliatory prosecution claim against Defendant D. Johnson, and (7) a malicious prosecution claim against Defendant D. Johnson. *See generally* ECF No. 1. "[A] plaintiff seeking to defeat qualified immunity must show: '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Lincoln v. Turner*, 874 F.3d 833, 847–48 (5th Cir. 2017) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011)). A court can begin its assessment with either prong, but both must be answered in the affirmative to deny immunity. *Gibson*, 773 F.3d at 666.

A.  Prior Restraint Claim Against Defendant L. Johnson

Plaintiff's prior restraint claim fails on the first prong of qualified immunity, so the Court need not analyze the second. "The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such

communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (citation, emphasis, and internal quotation marks omitted). Plaintiff asserts the City police department's EPPD Policy 343.11(A), "which bans filming without an official's discretionary approval, suppresses speech before it can be created or spoken and thus constitutes an unconstitutional prior restraint on protected First Amendment activity" was enforced by Defendant L. Johnson "when he grabbed Plaintiff's phone out of his hand and threw it to the ground, effectively ending his First Amendment expression, before arresting him for his speech." ECF No. 1 at 21.

This Court already held Plaintiff's *Monell* claims against the City for EPPD Policy 343.11(A) were not plausibly alleged and have since been dismissed. ECF No. 25 at 7–11. Similarly, Plaintiff fails to allege a prior restraint claim against Defendant L. Johnson. Plaintiff alleges officers threw his camera to the ground and arrested him "at least partially to enforce Defendant City's policy." ECF No. 1 at 33. Beyond this, there are no factual allegations that this policy was linked to the underlying events. *See generally* ECF No. 1. Plaintiff was not denied access to film the police under this policy, threatened with removal or arrest because of this policy, disciplined under this policy, nor did he  even credibly alter his behavior to avoid consequences under this policy. *Id.* Without more, Plaintiff's claims are merely conclusory. Because Plaintiff offers only a reference to the policy and describes a single, on-scene physical act by an individual officer, his allegations do not plausibly state a First Amendment prior restraint claim against that officer. Because Plaintiff fails to allege a constitutional violation, he cannot overcome Defendant L. Johnson's qualified immunity, and Plaintiff's First Amendment prior restraint claim is dismissed.

B.  Retaliation Claim Against All Officers

On the other hand, Plaintiff has met his burden to overcome the Officer's qualified immunity on the retaliation claims. Plaintiff plausibly alleges a First Amendment retaliation claim under *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)*,* and the right at issue was clearly established at the time of the challenged conduct. First, "[t]o state a First Amendment retaliation claim, a private citizen must allege: (1) he engaged in constitutionally protected activity; (2) the defendant's actions caused an injury that would chill a person of ordinary firmness from continuing that activity; and (3) the defendant's adverse actions were substantially motivated by the plaintiff's exercise of protected conduct." *Keenan*, 290 F.3d at 258. Although the First Amendment prohibits officials from retaliating against protected speech, it does not prevent officers from carrying out legitimate law-enforcement duties. *Grisham v. Valenciano*, 93 F.4th 903, 909 (5th Cir. 2024); *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). "Rather, officers cannot execute their law enforcement duties. . . in retaliation of speech or as imposed censorship." *Grisham,* 93 F.4th at 909.

Here, Plaintiff plausibly alleges the first element. He alleges that he was engaged in protected activity, recording law enforcement officers in public and verbally criticizing their conduct, when Defendant L. Johnson knocked his phone away and then arrested him. ECF No. 1 at 22–23. Plaintiff also asserts that he "stood a reasonable distance away from the officers, approximately 8–10 feet, which allowed him to observe and record the officers' conduct without interfering with their activities…[and] remained on a public sidewalk." *Id*. at 6. Plaintiff also claims that at no point, did he "physically obstruct any officer or interfere with their duties." *Id*. at 7.

Plaintiff also plausibly alleges the second and third elements by asserting that he was recording police from a reasonable, non-interfering distance when officers approached him, shined a light into his eyes, and knocked the phone from his hand. *Id.* at 6–10. Plaintiff alleges direct physical interference with the act of recording itself, which plausibly would chill a person of ordinary firmness from continuing to engage in protected activity. *Cf. Berg,* 2026 WL 271439 at 5–6 (dismissing claim because the alleged conduct amounted to a verbal warning and the plaintiff continued recording without further interference). Moreover, the temporal proximity between Plaintiff's protected activity and the officers' conduct, together with the alleged hostility to being filmed and the targeted interference with Plaintiff's phone, plausibly supports an inference that the officers acted in retaliation for Plaintiff's recording rather than for any legitimate, content-neutral law-enforcement purpose. *Id.* As such, Plaintiff plausibly pleads a retaliation claim.

Finally, the constitutional right at issue was clearly established at the time of the challenged conduct. The Fifth Circuit has held that the "First Amendment protects the right to record the police." *Turner v. Lieutenant Driver*, 848 F.3d 678, 690 (5th Cir. 2017). Further, the Supreme Court recognizes, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 462–63 (1987). Therefore, an officer physically knocking away a phone and arresting a person who is recording and criticizing their conduct from 8–10 feet away on a public sidewalk to stop that speech violates clearly established First Amendment law. For these reasons, Plaintiff overcomes qualified immunity and his claim for retaliation may proceed.

C.  Retaliatory Arrest Against All Officers

Plaintiff also overcomes qualified immunity on his retaliatory arrest claim. Plaintiff plausibly alleges a First Amendment retaliatory-arrest claim, and the right at issue was clearly established at the time of the challenged conduct. "As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). When a government official takes adverse action against an individual because of protected speech, and legitimate non-retaliatory grounds are insufficient to account for that action, the individual may seek relief under the First Amendment. *Id*. (citations omitted). "To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Id*. (quoting *Hartman*, 547 U.S. at 256).

Retaliatory motive alone is insufficient, as the plaintiff must plausibly allege that the motive caused the injury. *Id*. "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id*. To state such a claim, "a plaintiff must first establish the absence of probable cause and then demonstrate that the retaliation was a substantial or motivating factor behind the arrest." *Wood v. Bexar Cnty., Texas*, No. SA-21-CV-895-OLG (HJB), 2024 WL 4983660, at *13 (W.D. Tex. Sept. 20, 2024), *report and recommendation adopted*, 2024 WL 4982997 (W.D. Tex. Dec. 3, 2024). To survive a motion to dismiss, it is not enough to allege that officers acted with hostility and that Plaintiff was later arrested; rather, Plaintiff must plausibly allege that the arrest would not have occurred absent the officers' retaliatory motive. *Hartman*, 547 U.S. at 259–60.

Here, Plaintiff alleges that he was lawfully recording and criticizing police from a reasonable distance, complied with officers' commands, did not interfere with police activity, and nevertheless was seized, arrested, and tased after officers reacted negatively to his protected speech and filming. ECF No. 1 at 6–10. Accepting those allegations as true, the Court reasonably infers non-retaliatory grounds were insufficient to prompt the arrest and that the arrest would not have occurred but for the officers' retaliatory animus. *See Nieves*, 587 U.S. at 398–99. Therefore, Plaintiff plausibly alleges that retaliatory animus was the but-for cause of his arrest.

Moreover, the right at issue was clearly established at the time of the challenged conduct. *See Keenan*, 290 F.3d 252, 258 (5th Cir. 2002) ("The First Amendment prohibits ... adverse governmental action against an individual in retaliation for the exercise of protected speech activities.'); *Hill*, 482 U.S. at 462) ('Fifth Circuit precedent clearly establishes that it is a First Amendment violation if an officer retaliates against someone in response to protected speech."). Accordingly, Plaintiff's claim for retaliatory arrest may proceed.

D.  Unlawful Seizure against Defendant L. Johnson and Defendant Gomez

Turning next to the unlawful seizure claims against Defendant L. Johnson and Defendant Gomez. Here, too, Plaintiff overcomes qualified immunity because he plausibly alleges an unlawful seizure claim*,* and the right at issue was clearly established at the time of the challenged conduct. Fourth Amendment protections attach "whenever a police officer accosts an individual and restrains his freedom to walk away." *Terry v. Ohio*, 392 U.S. 1, 16 (1968)). To state a claim for unlawful seizure, plaintiffs must adequately allege they were seized without legal justification. *Lincoln v. Turner*, 874 F.3d 833, 840 (5th Cir. 2017). A person is seized when an officer, "by means of physical force or show of authority, has in some way restrained" that person's

liberty. *Flores v. City of Palacios*, 381 F.3d 391, 398 (5th Cir. 2004) (citation omitted). When considering whether a seizure occurred, courts must assess, "in view of all of the circumstances surrounding the incident, [whether] a reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988). While physical force is not required, to effect a seizure without it "*submission* to the assertion of authority is necessary." *McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017) (citation omitted).

Under the "very narrow exception" announced in *Terry v. Ohio*, police officers may "briefly" seize a person "for investigative purposes if they can point to 'specific and articulable facts' that give rise to a reasonable suspicion that a particular person has committed, is committing, or is about to commit a crime." *Lincoln*, 874 F.3d at 842 (citations omitted). Reasonable suspicion "requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence." *Carroll v. Ellington*, 800 F.3d 154, 171 (5th Cir. 2015). Courts evaluate the reasonableness of a *Terry* stop "by conducting a fact-intensive, totality-of-the-circumstances inquiry," based only upon the "information available to the officer[s] at the time of the decision to stop a person. *Id.* (alteration in original) (citation omitted).

Here, Plaintiff has pleaded specific facts showing both that a seizure occurred and that officers lacked reasonable suspicion to justify it. Plaintiff alleges Defendants L. Johnson and Gomez "seized Plaintiff with an unlawful show of force and authority when Defendant L. Johnson shone his high-powered flashlight directly into Plaintiff's eyes and aggressively approached Plaintiff while he and Defendant Gomez repeatedly, unlawfully demanded Plaintiff give them his ID." ECF No. 1 at 25–26. In response, the Officers argue "there are no allegations to suggest that Plaintiff felt that his liberty was restrained by the alleged shining of the flashlight." ECF No. 17 at

18. Defendants are correct that mere illumination with a flashlight, without more, does not by itself ordinarily constitute a seizure. However, Plaintiff alleges more than that: he claims officers approached him while he was lawfully recording and criticizing them, shined a flashlight directly on him, behaved aggressively, demanded his identification, physically interfered with his phone, and escalated the encounter to force. Further, this ultimately resulted in Plaintiff allegedly being tased, handcuffed, and forced to the ground. ECF No. 1 at 6–10. Under those alleged circumstances, a reasonable person would not have believed he was free to disregard the officers and walk away.

Moreover, drawing all reasonable inferences in Plaintiff's favor, those allegations do not provide the "minimal level of objective justification" necessary for a lawful investigatory detention, and they instead support the inference that officers detained Plaintiff because of the encounter itself, not because they had particularized grounds to suspect criminal conduct. Thus, Plaintiff has done more than offer labels and conclusions: he has pleaded specific facts showing both that a seizure occurred and that officers lacked reasonable suspicion to justify it.

Lastly, because "(a)n individual's right to be free from detention absent reasonable suspicion was clearly established well before the actions giving rise to this case[,]" *Turner*, 848 F.3d at 691, the next question is whether "the law so clearly and unambiguously prohibited [the] conduct that every reasonable official would understand that what he is doing violates the law." *Id*. Here, Defendants had no objective crime-suggestive facts at all—only his recording and criticism from a public sidewalk. Accepting Plaintiff's allegations as true, there were no facts that would have reasonably demonstrated Plaintiff had committed, was committing, or was about to commit, a crime; therefore, Defendants lacked reasonable suspicion to seize him. The law clearly

established that seizing him under those circumstances violated the Fourth Amendment. For these reasons, Plaintiff met his burden to overcome qualified immunity and his claim for unlawful seizure may proceed.

### E. Excessive Force Against All Officers

Plaintiff also plausibly alleges facts to overcome qualified immunity on his excessive force claims. As to qualified immunity's first prong, Plaintiff plausibly alleges a constitutional violation. Where an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment," which guarantees the right to be secure against unreasonable seizures." *Graham*, 490 U.S. at 394. "To prevail on an excessive force claim, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citation omitted). "The plaintiff's injury must be more than *de minimus*, "evaluated in the context in which the force was deployed." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). The extent of injury necessary is 'directly related to the amount of force that is constitutionally permissible under the circumstances. *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017). Therefore, "as long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id*.

The second and third elements "collapse into a single objective-reasonableness inquiry." *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018). This reasonableness inquiry factors "the severity of the crime at issue, whether the suspect poses an immediate threat to the

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. Courts also recognize that officers are often are required to make "split-second judgments" in "tense, uncertain, and rapidly evolving" circumstances regarding the amount of force necessary in a particular situation. *Id.* (quoting *Hathaway v. Bazany*, 507 F.3d 312, 321 (5th Cir. 2007)).

Here, Plaintiff alleges Officers used excessive force when arresting him despite the fact he at no point resisted. ECF No. 1 at 28. He avers he complied with officers' commands by "moving to. . . turn around and put his hands behind his back," when officers "took him to the ground and restrained him" and allegedly deployed a taser "13 times over a period of approximately two minutes" "despite Plaintiff never physically resisting, using force, or attempting to flee." ECF No. 1 at 27–28. As a result of the Officers' actions, Plaintiff suffered physical injuries, including "cardiac complications requiring emergency treatment, bruising, abrasions, nerve damage, and ongoing pain; emotional injuries, including PTSD, anxiety, depression, and fear; and economic damages, including medical expenses and lost income." *Id.* at 28-29.  At this stage, the facts alleged plausibly support a claim that Officers used force that was clearly excessive to any need and clearly unreasonable, notwithstanding Defendants' general right to use some physical coercion to effect an arrest. Plaintiff's factual allegations, taken as true, support this because nothing in Plaintiff's statements or actions indicated that he had committed any crime, posed any threat to officers or others, or was resisting or attempting to flee.

Plaintiff has also alleged that this right was clearly established. The Officer's argue there is no caselaw to show the *de minimus* use of force, as characterized by the Officers, was clearly unreasonable. ECF No. 17 at 19–20. Yet, Plaintiff cites two Fifth Circuit cases to support his

position. ECF No. 21 at 12–13. In *Newman*, the Fifth Circuit addressed whether the law on the use of tasers was clearly established at the time. *Newman v. Guedry,* 703 F.3d 757, 763–64 (5th Cir. 2012) (footnotes omitted). In that case, the officer contended he had no reasonable warning that tasing Newman multiple times violated Newman's constitutional rights, because there was then no binding caselaw on the appropriate use of tasers. *Id.* The court rejected that argument reasoning *"*[l]awfulness of force. . . does not depend on the precise instrument used to apply it. Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel." *Id.* Moreover, in *Aguirre v. City of San Antonio*, the Fifth Circuit asserted "it is unreasonable for an officer to use injurious force against a non-resisting, non-dangerous individual who is not suspected of a serious crime . . . especially when the force is applied after the suspect has been restrained and subdued." 995 F.3d 395, 412 (5th Cir. 2021). Here, Plaintiff alleges officers tased him multiple times while he was restrained and not resisting. Accepting these as true, officer's conduct was objectively unreasonable and violated clearly established law. Accordingly, the Court denies the Officer's qualified immunity on this claim.

F.  Retaliatory Prosecution Against Defendant D. Johnson

Conversely, Plaintiff's retaliatory prosecution claim against Defendant D. Johnson fails at the first prong of qualified immunity. In *Hartman v. Moore*, the Supreme Court articulated the standard necessary to raise a retaliatory prosecution claim against a non-prosecuting official, unlike a prosecuting official "who is absolutely immune from liability for the decision to prosecute." *Hartman v. Moore*, 547 U.S. 250, 262 (2006) (citation omitted). In a *Hartman*-style claim, "the defendant will be a nonprosecutor, an official, [] who may have influenced the prosecutorial decision but did not himself make it, and the cause of action will not be strictly for retaliatory

prosecution, but for successful retaliatory inducement to prosecute. The consequence is that a plaintiff [] must show that the nonprosecuting official acted in retaliation, and must also show that he induced the prosecutor to bring charges that would not have been initiated without his urging." *Id.*

Here, Plaintiff styles his cause of action for retaliatory prosecution against Defendant D. Johnson as if Defendant D. Johnson brought charges, without a need for a prosecutor's involvement. Plaintiff asserts this is appropriate because "[i]n Texas, officers can initiate criminal proceedings through sworn affidavits and citations without requiring prosecutorial involvement." ECF No. 1 at 29–30; ECF No. 21 at 15. However, a *Hartman*-style retaliatory prosecution claim necessarily involves at least two actors: a non-prosecuting official and a prosecutor. The Supreme Court made clear that to plead a retaliatory prosecution claim, a plaintiff must show "the non-prosecuting official acted in retaliation, and must also show he induced the prosecutor to bring charges that would not have been initiated without his urging." *Hartman*, 547 U.S. at 263. In this case, Plaintiff does not raise allegations that Defendant D. Johnson induced anyone, and nor does he cite any law to support his position that under Texas law he did not have to. Further, there are no allegations a *Hartman*-style prosecution was ever initiated because no complaint, information, indictment, or comparable formal charging decision was ever filed. Plaintiff's allegations, taken as true, describe a First Amendment retaliation theory based on the officers' alleged retaliatory arrest and related conduct, not a *Hartman*-style retaliatory prosecution. Accordingly, Defendant D. Johnson is entitled to qualified immunity on this claim, and it is hereby dismissed.

G.  Malicious Prosecution Against Defendant D. Johnson

Finally, because Plaintiff's malicious prosecution claim fails on the first qualified immunity prong, the Court need not reach the second. Plaintiff alleges Defendant D. Johnson initiated criminal proceedings with malice by knowingly including false statements in his affidavits, including claims that Plaintiff physically resisted arrest and actively obstructed officers, which are directly contradicted by video evidence. ECF No. 1 at 30. A threshold element of a Fourth Amendment malicious prosecution claim is that the plaintiff must allege the malicious prosecution resulted in a seizure of the plaintiff. *Thompson v. Clark*, 596 U.S. 36, 43 (2022). In *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023), the Fifth Circuit asserted that a Fourth Amendment malicious prosecution claim must also be supported by allegations of six elements: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages."

The Court finds Plaintiff fails to meet the threshold requirement of alleging any malicious prosecution *resulted* in a seizure. A plaintiff does not need to prove that all the elements of his claim were satisfied before he was seized, but he does "need[ ] to show ... that he was seized following some legal process in violation of the Fourth Amendment." *Reyes v. Greer*, 686 F.Supp.3d 524 (W.D. Tex. 2023). In *Reyes*, the court found this element was satisfied because the officers obtained a warrant to arrest Reyes after conspiring to paint him as the instigator of a bar fight. *Id.* at 534. The court reasoned that because the officers knew they lacked probable cause and as a result the warrant was invalid, and Reyes' subsequent arrest pursuant to it was unlawful. *Id.*

Here, there are no allegations that Defendants D. Johnson's misstatements and falsehoods resulted in a seizure, nor that he made, influenced, or participated in the decision to prosecute. In order plausibly plead Defendant L. Johnson participated in or that his actions influenced the commencement of criminal proceedings as required to sustain a claim of malicious prosecution, Plaintiff was required to present some allegations that the impact of Defendant D. Johnson's misstatements and falsehoods extended beyond Plaintiff's initial arrest and ultimately influenced Plaintiff's continued detention. *Cf. Sykes v. Anderson*, 625 F.3d 294, 311, 316 (6th Cir. 2010). As previously noted, there are no allegations this case was ever adopted by a prosecutor, resulted in any preliminary hearings or grand jury hearings, nor that any sort of charging document was ever filed. Plaintiff's complaint alleges Defendant D. Johnson initiated criminal proceedings with malice by knowingly including false statements in his affidavits, but does not allege how these affidavits had any effect on any continued detention. The Court further notes Plaintiff's Complaint makes no mention of said affidavits being presented to a magistrate, despite the parties arguing about whether the independent intermediate doctrine applies in their motion and responses. The proceedings started and ended with Plaintiff's arrest being the only event. *See* ECF No. 17 at 25–32.[5] As such, the Court finds Plaintiff's malicious prosecution claim fails at the first prong of qualified immunity, and said claim is hereby dismissed.

---

[5] The Court properly considers the attachments to Defendant's Motion as further details as to the charges Plaintiff alleges in his Complaint. When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (citations omitted). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 499 (5th Cir. 2000).

## CONCLUSION

For the reasons stated above, Defendants Sergeant L. Chris Johnson, Officer David Johnson, Officer Michael Silva, and Detective Gomez's "Joint Rule 12(B)(6) Motion to Dismiss Plaintiff's Complaint and Demand for Jury Trial," ECF No. 17, is **GRANTED IN PART and DENIED IN PART**.

SIGNED this **30th** day of **March 2026**.

_____
THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE